Tino X. Do, Esq. (SBN 221346)
SALTZMAN & JOHNSON LAW CORPORATION
5100-B1 Clayton Road, Ste 373
Concord, CA 94521
Telephone: (510) 906-4710
Email: tdo@sjlawcorp.com

Attorneys for Plaintiffs, Operating Engineers'
Health and Welfare Trust Fund for Northern California, et al.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

OPERATING ENGINEERS' HEALTH AND
WELFARE TRUST FUND, et al.,

        Plaintiffs,

    v.

PIPE-NET, INC., a California Corporation; and
ALBERT GONZALES, an individual,
        Defendant.

Case No. 4:23-cv-06267-LB

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:        June 6, 2024
Time:        9:30 a.m.
Location:   Courtroom B – 15th Floor
           450 Golden Gate Ave.
           San Francisco, CA 94102
Judge:     Hon. Magistrate Judge
           Laurel Beeler

      TO DEFENDANTS PIPE-NET, INC., a California Corporation and ALBERT GONZALES, an individual (hereinafter collectively "Defendants"):

      PLEASE TAKE NOTICE that pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs Operating Engineers' Health and Welfare Trust Fund for Northern California, et al. ("Plaintiffs") will and do hereby move for a default judgment against Defendants, and in Plaintiffs' favor in this matter. A hearing shall be conducted on June 6, 2024 at 9:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Laurel Beeler, at the above-referenced location.

/ / /

/ / /

1    This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities

2  in Support Thereof, and the Declarations of Tino X. Do and Sonya Brown filed concurrently herewith,

3  in support of Plaintiffs' Motion.

4

5  DATED: April 23, 2024                    SALTZMAN & JOHNSON LAW
                                            CORPORATION
6                                   By:

7                                            _____/S/_____

8                                            Tino X. Do
                                             Attorneys for Plaintiffs Operating Engineers'
9                                            Health and Welfare Trust Fund, et al.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
Case No. 4:23-cv-06267-LB

# TABLE OF CONTENTS

I.   STATEMENT OF RELIEF SOUGHT ............................................................................... 1

II.  FACTS .................................................................................................................................. 2

    A.   Defendants are bound to the terms of the Collective Bargaining Agreements and Trust Agreements for the Plaintiff Trust Funds. ......................................................... 2

    B.   Defendants are Liable for Amounts Due to Plaintiffs in Fringe Benefit Contributions, Liquidated Damages, and Interest, plus Attorneys' Fees and Costs. .............................. 3

    C.   Defendants are Aware of the Amouts Due. .......................................................................... 4

III. PROCEDURAL HISTORY ................................................................................................. 5

IV.  LEGAL ARGUMENT ......................................................................................................... 6

    A.   The Court Has Jurisdiction Over the Subject Matter and Parties. .................................. 6

    B.   The Court is Authorized to Enter Default Judgment. ...................................................... 6

        1.   Legal Standard for Default Judgment .................................................................. 6

        2.   The Eitel Factors Weigh in Favor of Entering Default Judgment Against Defendant. .................................................................................................................. 7

            (a)   Plaintiffs Will Suffer Prejudice if Default Judgment is Not Granted. ...... 7

            (b)   The Likelihood of Plaintiffs' Success on the Merits of their Claim is Certain. ........................................................................................................... 7

            (c)   The Sum of Money at Stake is Reasonable, Well Documented, and Justified. ......................................................................................................... 9

                (i)   Unpaid and Late-Paid Contributions, Liquidated Damages, and Interest .................................................................................... 9

                (ii)   Attorneys' Fees and Costs of Suit ............................................. 10

            (d)   No Dispute Concerning Material Facts Has Arisen. .............................. 10

            (e)   Defendants' Default was Not Due to Excusable Neglect. ................... 111

            (f)   A Decision on the Merits is Impossible. ................................................. 11

    C.   Interest, Liquidated Damages, and Attorneys' Fees and Costs Must Be Awarded To Plaintiffs. ................................................................................................................................ 12

        1.   Liquidated Damages and Interest Must be Awarded to Plaintiffs. ................. 122

        2.   Plaintiffs are Entitled to Recover all Attorneys' Fees and Costs Incurred. ........ 13

            (a)   Reasonableness of Hourly Billing Rate. .................................................. 14

(b)  Reasonableness of Hours Billed. ........................................................ 15

(c)  Reasonableness of Total Attorneys' Fees Requested. .......................... 15

V.  <u>CONCLUSION</u> ................................................................................................. 16

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
**Case No. 4:23-cv-06267-LB**

# TABLE OF AUTHORITIES

**Cases**

*Aldabe v. Aldabe,*
  616 F.2d 1089 (9th Cir. 1980) ............................................................... 6

*Bay Area Painters v. Alta Specialty*,
  2007 U.S. Dist. LEXIS 100544 (N.D. Cal. 2007) ................................. 10

*Bell v. Clackamas County*,
  341 F.3d 858 (9th Cir. 2003) ............................................................... 14

*Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller*,
  1997 U.S. Dist. LEXIS 100237 (N.D. Cal. 1997) ............................... 9

*Cabrales v. County of Los Angeles*,
  864 F.2d 1454 (9th Cir. 1988). ........................................................... 14

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986)) ........................................................... 15

*Credit Managers Ass'n of So. Calif. v. Kennesaw Life and Acc. Ins. Co.*,
  25 F.3d 743 (9th Cir. 1994) ..........................................................14, 15

*D'Emanuele v. Montgomery Ward & Co.*,
  904 F.2d 1379 (9th Cir. 1990) ........................................................... 15

*Davis v. City and County of San Francisco*,
  976 F.2d 1536 (9th Cir. 1992) ........................................................... 15

*Draper v. Coombes*,
  792 F.2d 915 (9th Cir. 1986 ............................................................... 13

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ........................................................6, 7, 9,

*Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*,
  875 F.2d 212 (9th Cir. 1989) ............................................................8, 12

*Jordan v. Multnomah County*,
  815 F.2d 1258 (9th Cir. 1987) ........................................................... 14

*Kerr v. Screen Extras Guild*,
  526 F.2d 70 (9th Cir. 1975) ............................................................... 14

*Local 81 v. Wedge Roofing*,
  15 E.B.C. 2470 (N.D. Cal. 1991) ....................................................... 12

i

*Mendenhall v. Nat'l Transp. Safety Bd.*,
  213 F.3d 464 (9th Cir. 2000) ................................................................................ 15

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ................................................................................... 14

*Nw. Adm'rs, Inc. v. Albertson's, Inc*.,
  104 F.3d 253 (9th Cir. 1996) ............................................................................10, 13

*Operating Engineers Pension Trust v. Beck Eng'g & Surveying Co.*,
  746 F.2d 557(9th Cir. 1984) .................................................................................. 12

*PepsiCo, Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002).............................................................7, 11, 12

*Phillip Morris USA, Inc. v. Castworld Products, Inc.*,
  219 F.R.D. 494 (C.D. Cal. 2003) ........................................................................... 11

*Roofers Local Union No. 81 v. Wedge Roofing*,
  811 F.Supp. 1398 (N.D. Cal. 1992) ....................................................................... 12

*Shanghai Automation Instrument Co. v. Kuei*,
  194 F. Supp. 2d 995 (N.D. Cal. 2001) .................................................................... 11

*TeleVideo Systems, Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. l987) ...............................................................................7, 10

*Truong Giang Corp. v. Twinstar Tea Corp.*,
  2007 U.S Dist. LEXIS 38642 (N.D. Cal. 2007) ........................................................ 9

*Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*,
  2013 U.S. Dist. LEXIS 71346 (N.D. Cal. 2013) ..................................................... 10

*Walters v. Statewide Concrete Barrier, Inc.*,
  2005 U.S. Dist. LEXIS 49433 (N.D. Cal. 2006) ..................................................... 7, 8

*Welch v. Metro Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ............................................................................14, 15

**Statutes**

29 U.S.C. § 1002 ................................................................................................... 2, 6

29 U.S.C. § 1132 ................................................................... 6, 8, 9, 10, 12, 13

29 U.S.C. § 1145 ................................................................................................... 7, 8

29 U.S.C. § 141 ...................................................................................................... 6

29 U.S.C. § 151 ...................................................................................................... 6

ii

29 U.S.C. § 152 .................................................................................................................. 2, 6

29 U.S.C. § 185 .................................................................................................................... 6

29 U.S.C. § 186 .................................................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 54 ..................................................................................... 7

Federal Rule of Civil Procedure 55 ..................................................................................... 6

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
Case No. 4:23-cv-06267-LB

I.    **STATEMENT OF RELIEF SOUGHT**

Plaintiffs seek entry of a judgment by default ordering Defendants Pipe-Net, Inc., a California Corporation, and Albert Gonzales, an individual, (hereinafter, "Defendants") to pay fringe benefit contributions, plus liquidated damages and interest on the unpaid and late-paid contributions for hours worked by Defendants' employees during the months set forth below. Finally, in accordance with ERISA § 502(g), the terms of Defendants' Collective Bargaining Agreement, and the terms of the relevant Plaintiff Trust Funds' Trust Agreements, Plaintiffs also seek to recover attorneys' fees and costs incurred in this action against Defendants.

Defendants are currently indebted to the Plaintiff Trust Funds as follows:

| Work Month | Late Paid Contributions | Contribution Balance | 20% Liquidated Damages | 10% Interest (through date of payment or 4/22/24) | Subtotals |
|---|---|---|---|---|---|
| Sep-2023 | $9,977.86 | $0.00 | $1,995.57 | $154.62 | $2,150.19 |
| Oct-2023 | $8,281.93 | $0.00 | $1,656.39 | $70.38 | $1,726.77 |
| Nov-2023 | $2,272.10 | $5,367.73 | $1,527.97 | $149.16 | $7,044.86 |
| Dec-2023 | $0.00 | $4,643.20 | $928.64 | $86.51 | $5,658.35 |
| Jan-2024 | $0.00 | $3,424.72 | $684.94 | $34.71 | $4,144.37 |
| Feb-2024 | $0.00 | $2,897.84 | $579.57 | $6.35 | $3,483.76 |
| Subtotals: | | $16,333.49 | $7,378.08 | $501.73 | $24,208.30 |
| Subtotal (Contributions, LDs and Interest on Late Paid and Current Contribution Balances Post Litigation: | | | | | $24,208.30 |
| 10% Liquidated Damages on Prior Late-Paid Contributions (3/23 – 8/23): | | | | | $5,843.87 |
| 10% Interest on Prior Late-Paid Contributions (8/23): | | | | | $25.21 |
| Subtotal (LDs and Interest on Paid Late Contributions Prior to Litigation): | | | | | $5,869.08 |
| Attorneys' Fees (6/30/23 – 3/31/24): | | | | | $13,239.50 |
| Costs (9/1/23 – 3/31/24): | | | | | $996.23 |
| Total (Attorneys' Fees and Costs): | | | | | $14,235.73 |
| GRAND TOTAL DUE: | | | | | $44,313.11 |

(*See* Declaration of Tino X. Do in Support of Motion for Default Judgment ("Do Decl.") filed concurrently herewith, ¶¶ 12-26; Declaration of Sonya Brown in Support of Motion for Default Judgment ("Brown Decl.") filed concurrently herewith, ¶¶ 12-16.)

/ / /

/ / /

## II.    FACTS

### A.    Defendants are bound to the terms of the Collective Bargaining Agreements and Trust Agreements for the Plaintiff Trust Funds

Plaintiffs are employee benefit plans and their respective trustees (collectively "Trust Funds," "Plaintiffs," or "ERISA Plaintiffs"). The Plaintiff Trust Funds are funds organized under and pursuant to the provisions of Section 302(c)(5), 302(c)(6) and 302(c)(9) of the Labor Management Relations Act of 1947, as amended. (29 U.S.C. 186 (c)(5), 186(c)(6) and 186(c)(9).) The principal offices of the Trust Funds are in the City of Alameda, County of Alameda, State of California. (Do Decl., ¶ 2.) Defendant Pipe-Net, Inc. ("Pipe-Net") is an employer within the meaning of ERISA Section 3(5) of 29 U.S.C. Section 1002 (5) and National Labor Relations Act Section 2(2) (29 U.S.C. Section 152 (2)). (*Id.* at ¶ 3.)

On July 14, 1999, Defendant Albert Gonzales on behalf of Pipe-Net, Inc. entered into the "Independent Northern California Construction Agreement" (the "Independent Agreement") with the Operating Engineers Local No. 3 of the International Union of Operating Engineers, AFL-CIO (the "Union"). (Brown Decl., ¶ 3, Exhibit A.)  Under the terms of the Independent Agreement, if the individual employer is a corporation, its principal shareholder(s) personally guarantee all payment of wages, fringe benefit contributions, liquidated damages, interest, and collections costs, including but not limited to, attorneys' fees and auditor/accountant fees.  (*Id.*)

Pursuant to the terms of the Independent Agreement, the Individual Employer agrees to be bound to the terms and conditions of future Master Agreements and any amendment(s) thereto; provided, however, that in the event either party desires to terminate this Agreement, they may provide written notice during the period of sixty (60) to ninety (90) days prior to the termination date of the Master Agreement by either the Union or the Employer. (Brown Decl., ¶ 4.)  No such notice was given by either party and therefore Pipe-Net remains bound to the terms of the Independent and Master Agreements. (*Id.*)

The Independent Agreement incorporates the terms and conditions of the current Master Agreement ("Master Agreement") between the Union and the the Signatory Association ("Master

Agreement"). (Brown Decl., ¶ 5, Exhibits A, B, C.) The Independent Agreement and Master Agreement are collectively referred to hereinafter as the "Bargaining Agreements." (*Id.* at ¶¶ 4-5.)  The Master Agreements require Pipe-Net to make contributions to Plaintiffs' Trust Funds based on the hours worked by Defendants' employees.  (*Id.*, ¶ 6, Exhibits B-C, Section 12.00.00–12.14.00.)

The Master Agreements incorporate the terms of the Trust Agreements establishing the various Plaintiff Trust Funds (the "Trust Agreements"), which also require Pipe-Net to pay fringe benefit contributions to Plaintiffs and enumerates the procedures if they fail to do so. (Brown Decl., ¶ 7, Exhibits B-C, Section 12.01.03, Exhibit D.)  Plaintiffs are third-party beneficiaries of the Bargaining Agreements. (*Id.*)

**B.    Defendants are Liable for Amounts Due to Plaintiffs in Fringe Benefit Contributions, Liquidated Damages, and Interest, plus Attorneys' Fees and Costs**

The Master Agreements, as well as the Trust Agreements provide that all benefit contributions are due on or before the fifteenth (15th) day of the month following the month in which hours were worked and are delinquent if not received by the twenty-fifth (25th) day of that month. If contributions are delinquent, the Master Agreements and Trust Agreements mandate that Pipe-Net pays interest and liquidated damages on the delinquent contributions.  (Brown Decl., ¶ 8, Exhibits B-C, Section 12.01.02; 12.13.01-12.13.02, Exhibit D, Section 1(A)(2)-(4), p. 1- 2.)

Pursuant to the terms of the Master Agreement, as well as the Trust Agreements, prior to litigation liquidated damages are calculated at ten percent (10%) of the delinquent contributions. (Brown Decl., ¶ 9, Exhibits B-C, Section 12.13.01, Exhibit D, Section 1(A)(3)(b), p. 2.)  However, once a lawsuit has been filed, the Master and Trust Agreements provide that liquidated damages are calculated at twenty percent (20%). (*Id.*)  Pursuant to the Master and Trust Agreements, interest accrues on the delinquent unpaid contributions at ten percent (10%) per annum calculated from the day contributions are considered delinquent until paid. (*Id.*) The Master Agreements provide for reimbursement of attorneys' fees and costs, audit fees, and all other expenses incurred in connection with the collection of delinquent contributions. (Brown Decl., ¶ 10, Exhibits B-C, Section 12.13.06.) The Trust Funds have incurred attorneys' fees and costs. (*Id.*; *see also* Do Decl., ¶¶ 20-26.)

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
**Case No. 4:23-cv-06267-LB**

The Trust Funds' Benefit Administration computer system records the amounts self-reported due in fringe benefit contributions by employers such as Pipe-Net as well as the date that payments are received and automatically calculates 10% interest and 10% liquidated damages on fringe benefit contributions that are reported but not paid, as well as contributions that are paid late. (Brown Decl., ¶ 11.) When fringe benefit contributions are outstanding and a lawsuit has been filed to collect delinquent contributions, Counsel for the Trust Funds calculates liquidated damages at 20% pursuant to the terms of the Independent and Master Agreements, as well as the terms of the Trust Agreements detailed above. (*Id*.)

Defendants has failed to pay part or all of its contributions owed for the months of **November 2023, December 2023, January 2024** and **February 2024**, and therefore 20% liquidated damages and 10% interest per annum have been incurred for those months.  (Brown Decl., ¶¶ 12, 13.)  Defendants also failed to submit contributions for the months of **September 2023** and **October 2023** in a timely manner and therefore 20% liquidated damages and 10% interest per annum were incurred for those months. (*Id*., ¶ 14.)  Finally, Defendant paid its **March 2023 through August 2023** contributions, prior to the filing of the lawsuit, and therefore 10% liquidated damages and 10% interest per annum were incurred thereon.  (*Id*., ¶ 15.)

### C.    Defendants are Aware of the Amounts Due

On June 30, 2023, Plaintiffs' Counsel's office sent a demand letter to Defendants requesting that Defendants submit their March through May 2023 contribution reports and payments. (Do Decl., ¶ 7, Exh. C.)  As Defendants failed to fully with the demand letter, Plaintiffs' Counsel sent a follow up demand letter on July 7, 2023, requesting submission of payment for their reported March through May 2023 contributions as well as payment for liquidated damages and interest on its March through May 2023 contributions.  (*Id*., ¶ 8, Exhibit D.)

On September 8, 2023, Plaintiffs' Counsel sent a further follow up demand letter to Defendants requesting that they submit their payment for their reported June 2023 contributions as well as liquidated damages and interest incurred on their late-paid March through June 2023 contribution reports. (Do Decl., at ¶ 9, Exh. E.)  As Defendants failed to comply with the prior demand letters, Plaintiffs' Counsel

sent a final demand letter on November 1, 2023 requesting submission of their September 2023 contribution report and payment as well as payment for liquidated damages and interest that had accrued on the late paid March through August 2023 contributions as well as attorneys' fees incurred by the Trust Funds to date. (*Id.*, ¶ 10, Exhibit F.)

Defendants are well aware of the action against them. Defendants were properly served with a copy of the Clerk's Notice of Entry of Default and every other pleading in this action and did not request that the Default be set aside or otherwise appear or try to resolve this matter. (Do Decl., ¶¶ 13-16.)

### III.  **PROCEDURAL HISTORY**

Plaintiffs filed a Complaint on December 4, 2023 to compel Defendants to report and pay contributions due for hours worked during the month of October 2023. (Do Decl., ¶ 11.) Plaintiffs further sought payment of contributions for the month of September 2023, as well as  liquidated damages and interest on unpaid contribution and late-paid contributions for the months of March through August 2023. The Complaint also sought any and all contributions, and all liquidated damages and interest on delinquent contributions, found due on timecards, audit, or otherwise, including estimated contributions for any months Defendants failed to report to Plaintiffs, through the time of Judgment. The Complaint further sought reimbursement of all attorneys' fees and costs expended by Plaintiffs in collecting the outstanding reports and amounts owed. (Dkt. No. 1.)

Plaintiffs served Defendant Albert Gonzales by substituted service on January 7, 2024, and a Proof of Service of Summons was filed with this Court on January 29, 2024. (Dkt. No. 8.) Plaintiffs served Defendant Pipe-Net by substituted service on January 24, 2024, and a Proof of Service of Summons was filed with this Court on January 29, 2024. (Dkt. No. 8.) Defendants' deadline to respond to Plaintiffs' Complaint was February 7, 2024 and February 14, 2024. Defendants have not made an appearance in this matter. (Do Decl., ¶ 13.)

As Defendants failed to file a responsive pleading or otherwise respond to the lawsuit, Plaintiffs filed their Request for Entry of Default on February 15, 2024. (Dkt. No. 9.) The Clerk entered default as to Defendants on February 23, 2024. Plaintiffs served Defendants with a copy of the Clerk's Notice of Entry of Default, and a Proof of Service of same was filed with the Court on February 28, 2024. (Dkt.

No. 13; Do Decl., ¶ 14.)

As of the date of the filing of this motion, Defendants have failed to plead or otherwise respond to the lawsuit. Plaintiffs are required to file this Motion for Default Judgment against Defendants. (Do Decl., ¶ 15.)

## IV.  LEGAL ARGUMENT

### A.  The Court Has Jurisdiction Over the Subject Matter and Parties

When considering whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." (*In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999).) Here, this Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 1132, which provides that plan fiduciaries can bring civil actions to enforce the terms of the plan. Further, jurisdiction exists in this Court over all claims by virtue of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* ("LMRA"), specifically 29 U.S.C. § 185, as Plaintiffs seek to enforce the terms and conditions of a collective bargaining agreement.

Personal jurisdiction exists over Defendants since Defendants are employers by virtue of 29 U.S.C. § 1002 (5), and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* ("NLRA"), specifically 29 U.S.C. § 152 (2), and Defendants have been properly served. (*See* Dkt. No. 9.)

### B.  The Court is Authorized to Enter Default Judgment

#### 1.  Legal Standard for Default Judgment

Federal Rule of Civil Procedure ("FRCP") 55 (b)(2) permits a court, following a default by a Defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. (*Draper v. Coombes,* 792 F.2d 915, 924 (9th Cir. 1986), citing *Aldabe v. Aldabe,* 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.").)

The Ninth Circuit has enumerated several factors which the court may consider in exercising its discretion as to whether an entry of default judgment is proper (the "*Eitel* Factors"), which are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint; (3) the sum of money at stake; (4) the possibility of dispute concerning

material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. (*Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).)

In applying this discretionary standard, the factual allegations contained in Plaintiffs' complaint will be taken as true, except for those relating to the amount of damages. (*TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) .) Where a default judgment is granted, the scope of relief is limited only by Federal Rule of Civil Procedure 54 (c), which mandates that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." (*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002).)

### 2. The Eitel Factors Weigh in Favor of Entering Default Judgment Against Defendant

A careful consideration of the *Eitel* Factors as a whole demonstrates that entry of default judgment against Defendant in this matter is appropriate.

### (a) Plaintiffs Will Suffer Prejudice if Default Judgment is Not Granted

Under the first *Eitel* factor, the Court must examine whether Plaintiffs will suffer prejudice if default judgment is not granted. (*Eitel*, 782 F.2d at 1471-72.) As discussed herein, Plaintiffs' claims against Defendants for violating ERISA § 515, 29 U.S.C. § 1145, and the Bargaining and Trust Agreements, are sound and well plead. If the Court were to deny Plaintiffs' Motion for Default Judgment, Plaintiffs would have no other avenue for recovery. (*PepsiCo*, 238 F.Supp.2d at 1177.) Further delay for Plaintiffs in securing a judgment only serves to increase the chances that Plaintiffs will not be able to recover the amounts due by Defendants. Therefore, the first *Eitel* factor weighs in favor of granting default judgment against Defendants.

### (b) The Likelihood of Plaintiffs' Success on the Merits of their Claim is Certain

The second *Eitel* Factor addresses the sufficiency of Plaintiffs' Complaint and the probability of success on the merits of its underlying claim. (*Walters v. Statewide Concrete Barrier, Inc.*, 2005 U.S. Dist. LEXIS 49433, at *7-*8 (N.D. Cal. 2005) ("A party seeking default judgment must state a valid

claim upon which it may recover.").) ERISA § 515 provides that every employer who is obligated to make contributions under a collective bargaining agreement shall make them in accordance with the terms of such agreement. In addition, under ERISA, a fiduciary may bring an action for equitable relief to enforce any provision of the terms of the plan 29 U.S.C. §1132 (a)(3)(B)(ii).

When a benefit plan wins a judgment in an action to enforce Section 1145, Section 1132 of the same title provides that the plan is entitled to the unpaid contributions, interest thereon, reasonable attorneys' fees and costs, and liquidated damages. (29 U.S.C. § 1132 (g)(2).) The liquidated damages provision, as set forth in Section 1132 (g)(2)(C)(ii), applies when: (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages. (*Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989).) Liquidated damages are mandatory where factors (1)-(3) above are satisfied. (*Id.* at 215.)

Here, Plaintiffs' Complaint states clear claims for relief. Defendant Pipe-Net, Inc. is an employer by virtue of ERISA and the NLRA. Defendants are bound to the terms of the Independent and Master Agreements. (Brown Decl., ¶¶ 3-10.) Therefore, Defendants have a statutory duty to timely make required contribution payments to Plaintiffs under ERISA § 515, 29 U.S.C. § 1145.

Additionally, by signing the Independent Agreement, which incorporates the terms of the Master Agreement and Trust Agreements, Defendants have an express contractual obligation to timely make benefit contributions to Plaintiffs for hours worked by their employees. (Brown Decl., ¶¶ 3-10.) Therefore, under § 1132 (g)(2) and the Independent, Master, and Trust Agreements, Plaintiffs are entitled to any unpaid contributions, interest and liquidated damages on any unpaid and late-paid contributions, reasonable attorneys' fees and costs, and all other reasonable expenses incurred in relation to this action.

To date, Defendants have failed and refused to pay outstanding amounts due including contributions, liquidated damages, and interest, plus attorneys' fees and costs. (Brown Decl. ¶¶ 12-16; Do Decl., ¶¶ 20-26.)

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
Case No. 4:23-cv-06267-LB

Liquidated damages are mandatory in this case, upon a judgment in favor of Plaintiffs, since the other *Idaho Plumbers* factors are satisfied: unpaid contributions that may be due from Defendants (s*ee* Dkt. No. 1) existed at the time the Complaint was filed, and the Collective Bargaining Agreement and Trust Agreements specifically provide for liquidated damages for failure to timely pay the contributions due. Thus, 29 U.S.C. § 1132 (g)(2), including its liquidated damages provision, is applicable in this matter, which makes the likelihood of Plaintiffs' success on the merits certain. In addition, all allegations in the Complaint have been properly pled. Plaintiffs have submitted declarations from their Counsel and Fringe Benefit Director in support of the factual allegations contained in the Complaint and this Motion for Default Judgment. Therefore, the second *Eitel* factor also weighs in favor of granting Plaintiffs' Motion for Default Judgment.

**(c)     The Sum of Money at Stake is Reasonable, Well Documented, and Justified**

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendants. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of Defendants' conduct. (*Eitel,* 782 F.2d at 1471.) If the sum of money at issue is reasonably proportionate to the harm caused by Defendants' actions, properly documented, and contractually justified, then default judgment is warranted. (*Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller*, 1997 U.S. Dist. LEXIS 100237, at *2 (N.D. Cal. 1997).) A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendants' actions. (*Truong Giang Corp. v. Twinstar Tea Corp*., 2007 U.S Dist. LEXIS 38642, at *32 (N.D. Cal. 2007).) In determining if the amount at stake is reasonable, the Court may consider Plaintiffs' declarations, calculations, pay stubs, and other documentation of damages. (*Id.* at 33.)

**(i)     Unpaid and Late-Paid Contributions, Liquidated Damages, and Interest**

The amount of required contributions, as well as rates for liquidated damages and interest on delinquent contributions, are set forth in the Bargaining and Trust Agreements to which Defendants are bound.

9

The amounts claimed herein as due also include liquidated damages and interest on Defendants' unpaid contributions, in accordance with the Independent, Master, and Trust Agreements. The amount Defendants owe to Plaintiffs has been established in the supporting declarations filed herewith, is well documented, and due pursuant to ERISA §515, and the Independent, Master, and Trust Agreements; therefore, the amount claimed herein as due is reasonable.

In addition, "[c]ourts in the Ninth Circuit have made a limited exception [to the requirement that default judgment be constrained by the remedies sought in the complaint] for delinquent contributions that come due after a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA." (*Bay Area Painters v. Alta Specialty*, 2007 U.S. Dist. LEXIS 100544, at *4 (N.D. Cal. 2007); *see also Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*, 2013 U.S. Dist. LEXIS 71346, at *10 (N.D. Cal. 2013).

### (ii)    Attorneys' Fees and Costs of Suit

Section 1132 (g) of ERISA requires the Court to award Plaintiffs "reasonable attorneys' fees and costs of the action" when Plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. (29 U.S.C. §1132 (g)(2)(D); *Nw. Adm'rs, Inc. v. Albertson's, Inc*., 104 F.3d 253, 258 (9th Cir. 1996).) Similarly, the Bargaining and Trust Agreements provide that an employer must pay all reasonable attorneys' fees and audit fees.

Here, Plaintiffs seek reimbursement for attorneys' fees in the amount of **$14,235.73**, representing hours worked by Plaintiffs' Counsel in connection with this action. (Do., ¶¶ 21-24, 26.) Plaintiffs are also requesting costs incurred in this matter in the amount of **$996.23**. (*Id*. at ¶¶ 25-26.) This amount is comprised of the filing of the Complaint, service of process fees for service of the Summons and Complaint on Defendants. (*Id.* at ¶ 25.)

### (d)    No Dispute Concerning Material Facts Has Arisen

The fourth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Defendants have not filed an answer in response to Plaintiffs' Complaint, therefore no dispute concerning material facts has arisen. As the Clerk of Court has already entered default, the Court must take all well pleaded facts, except those pertaining to damages, as true. (*TeleVideo Systems*, 826 F.2d

1    at 917-18.)

2        As stated above, Defendants are well aware of this action against him. Defendants were duly

3    served with the Complaint and Summons in this Action. (Do Decl., ¶ 13.)  Defendants did not request

4    that the Default be set aside or otherwise appear in the action. (*Id.* at ¶¶ 15, 16.)  The evidence submitted

5    by Plaintiffs in support of this Motion for Default Judgment, including the Independent and Master

6    Agreements and incorporated Trust Agreements, supports Plaintiffs' account of the events. The record,

7    therefore, reflects that little possibility of dispute exists as to Defendants' liability for damages.

8            **(e)    Defendants' Default was Not Due to Excusable Neglect**

9        The fifth *Eitel* factor contemplates the possibility that a defendant's default was the result of

10    excusable neglect. Under this analysis, the Court considers whether defendant was put on adequate

11    notice to apprise it of the pendency of the action brought against it. (*Phillip Morris USA, Inc. v.*

12    *Castworld Products, Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003).) In addition, the Court also considers

13    whether the circumstances surrounding defendant's failure to answer the complaint are sufficient to

14    excuse or justify its default. (*Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1005

15    (N.D. Cal. 2001) (Default cannot be attributed to excusable neglect where defendants were properly

16    served with the complaint, the notice of entry of default, and the papers in support thereof).)

17        Here, there is no possibility of excusable neglect. Defendants are well aware of this action

18    against him. Defendants were duly served with the Complaint and Summons in this Action. (Do Decl.

19    ¶¶ 13.)  Defendants did not request that the Default be set aside or otherwise appear in the action. (*Id.*

20    at ¶¶ 15, 16.)  Defendants are not, to the best of Plaintiffs' knowledge, an infant or incompetent. (*Id.* at

21    17.) Thus, the instant Motion was filed without any indication of excusable neglect of Defendants.

22            **(f)    A Decision on the Merits is Impossible**

23        Under the final *Eitel* factor, the Court must consider the strong policy of the Federal Courts in

24    favoring decisions on the merits. This policy, however, is not dispositive; rather, the Court still has great

25    latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors.

26    (*PepsiCo*, 238 F.Supp.2d at 1172, 1177.)  Moreover, a "defendant's failure to answer the plaintiffs'

27    complaint makes a decision on the merits impractical, if not impossible." (*Id.*) Therefore, when a

28

defendant fails to defend an action, the policy of favoring decisions on the merits does not preclude a court from granting a default judgment. (*Walters,* 2005 U.S. Dist. LEXIS 49433, at *8; *PepsiCo*, 238 F.Supp.2d at 1177.)

Here, Defendants failed to participate in the proceedings brought against them, despite adequate notice and opportunity to do so. Just like in *PepsiCo,* Defendants' failure to answer the Complaint has made a decision on the merits impractical, if not impossible. Plaintiffs should not be penalized for Defendants' decision to ignore his responsibilities to the Court and not appear or otherwise defend himself in this action. Thus, despite the strong policy of the federal courts in favoring decisions on the merits, default judgment is appropriate in this case.

### C.    Interest, Liquidated Damages, and Attorneys' Fees and Costs Must Be Awarded To Plaintiffs

#### 1.    Liquidated Damages and Interest Must be Awarded to Plaintiffs

ERISA § 515 provides that every employer who is obligated to make contributions to a multiemployer plan pursuant to the terms of a collective bargaining agreement must make such contributions in accordance with the terms of such agreement. Where judgment is entered in favor of the plan in an action to enforce Section 515, the court must award the plan interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and costs, and such other legal or equitable relief as the court deems appropriate. (ERISA § 502 (g), 29 U.S.C. § 1132 (g)(2); s*ee also, Operating Engineers Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (An award of liquidated damages under §1132 (g)(2) is "mandatory and not discretionary.")  To award statutory liquidated damages, the Ninth Circuit requires that unpaid contributions exist at the time the lawsuit was filed. (*Idaho Plumbers*,  875 F.2d at 212.)

In *Local 81 v. Wedge Roofing*, 15 E.B.C. 2470 (N.D. Cal. 1991), this Court specified that liquidated damages shall also be awarded where further unpaid contributions become delinquent after the filing of the lawsuit.

Plaintiffs' action in this matter is based on the statutory duty provided by ERISA § 515 for payment of contributions pursuant to the terms of valid Collective Bargaining Agreements (the

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
**Case No. 4:23-cv-06267-LB**

Independent and Master Agreements), to which Defendants are signatory, and the incorporated Trust Agreements. Defendants' failure to comply with the terms of the Independent, Master, and Trust Agreements was the cause of this litigation, at great expense to Plaintiffs in administration, attorneys' fees, and costs.

Pursuant to the terms of the Bargaining and Trust Agreements, and ERISA § 502(g), 29 U.S.C. 1132 (g)(2), Defendants are liable for ten percent (10%) liquidated damages and ten percent (10%) interest per annum on their unpaid and late-paid contributions from the date that they were delinquent until present (including those found due on any future audit), as well as audit fees and attorneys' fees and costs. However, the liquidated damages increase to twenty percent (20%) on contributions that are the subject of litigation (including the contributions found due pursuant to any future audit). (Brown Decl., ¶¶ 9-11.) The amount of required contributions, as well as rates for liquidated damages and interest on delinquent contributions, are set forth in the Independent, and Master Agreement, and incorporated Trust Agreements, to which Defendants are bound. The amounts Defendants owes to Plaintiffs has been established in the declarations of Plaintiffs' Counsel and Fringe Benefits Director. (*See generally,* Do Decl. and Brown Decl.)  Thus, there can be no question these are reasonable amounts.

### 2.    Plaintiffs are Entitled to Recover all Attorneys' Fees and Costs Incurred

Section 1132 (g)(2) of ERISA requires the Court to award Plaintiffs "reasonable attorneys' fees and costs of the action" when Plaintiffs obtain a judgment in their favor or otherwise obtain the relief sought. (29 U.S.C. § 1132 (g)(2) (D); *Nw. Adm'rs, Inc.*, 104 F.3d at 253, 258.)  Similarly, the Collective Bargaining Agreements provide that Defendants must reimburse Plaintiffs for attorneys' fees, audit fees, costs, and all other expenses incurred in connection with the collection of delinquent contributions.

Here, Plaintiffs seek reimbursement of attorneys' fees reasonably incurred by Plaintiffs' counsel in connection with this action from June 30, 2023 through March 31, 2024 totaling $13,239.50. (Do Decl., ¶¶ 21-24, 26.)

Plaintiffs' counsel has submitted a declaration summarizing the qualifications of, and tasks completed, and time spent by attorneys and paralegals in this matter, along with their hourly rates. (*Id.*

at ¶ 20.) Plaintiffs are also requesting costs incurred in this matter in the amount of $996.23. (*Id.* at ¶ 25.) Plaintiffs submit that all amounts incurred in pursuing Defendants' unpaid amounts owed are reasonable and should be awarded to Plaintiffs upon default judgment.

In the Ninth Circuit, the reasonableness of attorneys' fees is first determined by calculating the lodestar amount. (*Credit Managers Ass'n of So. Calif. v. Kennesaw Life and Acc. Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994) ("When awarding fees under ERISA, 'the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (finding strong presumption that the lodestar figure represents a reasonable fee).) "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." (*Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir. 1996).) The court may, however, adjust the award from the lodestar figure upon consideration of additional factors. (*Kerr v. Screen Extras Guild*, 526 F.2d 70 (9th Cir. 1975); *Credit Managers Ass'n of So. Calif.,* 25 F.3d at 750 ("[T]he court may increase or decrease the lodestar fee based on factors identified by this circuit in *Kerr*, 526 F.2d at 67 that are not subsumed within the initial calculation of the lodestar.").)

### (a)    Reasonableness of Hourly Billing Rate

The billing rates charged to the Trust Funds by Plaintiffs' Counsel in this action are: a paralegal at $175 per hour and a shareholder attorney at $305 per hour (s*ee* Do Decl., ¶ 20), which are <u>significantly lower</u> than those charged in the area. However, "[t]he starting point for calculating attorneys' fees is "the prevailing market rate in the relevant community." (*Bell v. Clackamas County*, 341 F.3d 858, 860 (9th Cir. 2003).) In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. (*See Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988).)

In the Ninth Circuit, evidence of billing rates awarded in ERISA cases in the region must be considered. (*Welch v. Metro Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007).) The Ninth Circuit has "repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates

actually charged to the prevailing party." (*Id*. citing *Mendenhall v. Nat'l Transp. Safety Bd.,* 213 F.3d 464, 471 (9th Cir. 2000) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).) "Rather, billing rates 'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" (*Id*. quoting *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992).)

### (b)    Reasonableness of Hours Billed

Plaintiffs' Counsel billed a total of 56.3 hours from June 30, 2023 through March 31, 2024, incurring $13,239.50 in fees, consisting of 22.6 attorney hours and 33.7 paralegal hours. (Do Decl., ¶¶ 18-20.) The attorneys' fees specified above were incurred by Plaintiffs for work performed by Plaintiffs' Counsel for activities specifically described in detail in the billing records attached to the Declaration of Tino X. Do, filed concurrently herewith. (*Id*. at ¶¶ 21-23.) Accordingly, all hours reported were reasonably expended.

### (c)    Reasonableness of Total Attorneys' Fees Requested

As set forth above, in the Ninth Circuit the reasonableness of attorneys' fees is first determined by calculating the lodestar amount. (*Credit Managers,* 25 F3d at 743, 750 ("When awarding fees under ERISA, 'the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"), quoting *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir. 1990).) The lodestar amount is equal to the number of hours Plaintiffs' counsel reasonably expended on the litigation multiplied by a reasonable hourly rate. (*Morales*, 96 F.3d at 363.)  The reasonable hourly rate is based on the prevailing market rate in the relevant community in ERISA actions.

Here, however, Plaintiffs are only requesting the billing rates that its attorneys <u>actually</u> charged, which is far below the lodestar amount based on the prevailing market rate in the relevant community in similar ERISA actions. Therefore, at the rates requested, the Court should award Plaintiffs $13,239.50 for its reasonable attorneys' fees incurred. (Do Decl., ¶¶ 20-24, 26.) In addition, the Court should award Plaintiffs costs in the amount of $996.23 incurred in this matter. (*Id.* ¶¶ 25-26.) It is further requested

that Plaintiffs be awarded any additional attorneys' fees and costs they incur, and that Plaintiffs may submit additional declarations to the Court relative to such additional amounts claimed due.

## V.   <u>CONCLUSION</u>

Based on the above, Plaintiffs respectfully request that Judgment be entered in their favor and against Defendants Pipe-Net, Inc. and Albert Gonzales, and an Order be issued that Judgment be entered in Plaintiffs' favor and against Defendants in the amount of $44,313.11.

Plaintiffs further request that they be awarded additional attorneys' fees and costs they incur and that they be permitted to submit additional declarations to the Court relative to such amounts claimed due.

Respectfully submitted,

Dated: April 23, 2024                    SALTZMAN & JOHNSON LAW
                                          CORPORATION

                                By:  _____/S/_____
                                     Tino X. Do
                                     Attorneys for Plaintiffs Operating Engineers'
                                     Health and Welfare Trust Fund, et al.

**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**
**Case No. 4:23-cv-06267-LB**