UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PIPE-NET, INC., et al.,<br><br>Defendants. | Case No. 23-cv-06267-LB<br><br>**ORDER REASSIGNING CASE; REPORT AND RECOMMENDATION TO GRANT DEFAULT JUDGMENT**<br><br>Re: ECF No. 14 |

## INTRODUCTION

The plaintiffs — benefits plans and trustees — sued the defendants for unpaid fringe-benefit contributions, liquidated damages, and interest pursuant to the parties' collective bargaining and trust agreements, the Labor Management Relations Act (LMRA), and the Employee Retirement Income Security Act of 1974 (ERISA). The defendants did not appear in the case, the Clerk of Court entered their default, and the plaintiffs moved for default judgment. Because not all parties have appeared and consented to the undersigned's jurisdiction, the case must be reassigned. *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017). The court asks the Clerk of Court to assign the case to a district judge and recommends that the newly assigned judge grant the motion and enter judgment in the plaintiffs' proposed form of judgment at ECF No. 14-3. The amount is $44,313.11, which includes fees and costs.

**STATEMENT**

**1. The Parties**

The plaintiffs are employee-benefit plans as defined in ERISA § 3(3), 29 U.S.C. § 1002(3), "multiemployer plans" as defined in ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and trustee-fiduciaries under ERISA § 402(a), 29 U.S.C. § 1102(a), have principal offices in Alameda County, and are authorized to bring this lawsuit. The defendants are Pipe-Net, Inc., and Albert Gonzales, located in Gilroy, and are employers within the meaning of ERISA Section 3(5), 29 U.S.C. Section 1002(5) and the National Labor Relations Act § 2(2), 29 U.S.C. Section 152(2).[1]

**2. The Agreements**

On July 14, 1999, Mr. Gonzales, on behalf of Pipe-Net, entered into the collective-bargaining agreement that applies here.[2] The plaintiffs are third-party beneficiaries of the agreement. The agreement incorporates the terms and conditions of the current Master Agreement, thus binding the defendants to the terms and conditions of both agreements.[3]

Employers must make contributions based on the hours that their employees work. Under the agreement, if an individual employer is a corporation, its principal shareholder guarantees payment of wages, fringe-benefits contributions, liquidated damages, interest, and collection costs.[4] The contribution payments are due on the fifteenth day of the month following the month when hours were worked and are delinquent if not received by the twenty-fifth day of the month.[5]

If contributions are delinquent, employers pay interest and liquidated damages. Liquidated damages are ten percent of unpaid contributions and increase to twenty percent after a lawsuit is filed. Interest at ten percent per annum is calculated from the day that the contributions are

---

[1] Do Decl. – ECF No. 14-2 at 1–2 (¶¶ 2, 6). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Brown Decl. – ECF No. 14-1 at 2 (¶ 3); Indep. Agreement, Ex. A to *id.* – ECF No. 14-1 at 6.

[3] *Id.* – ECF No. 14-1 at 6 (§ 2)

[4] *Id.* (§ 1.12)

[5] Brown Decl. – ECF No. 14-1 at 3 (¶ 8); Master Agreement (2016–2020), Ex. B to *id.* – ECF No. 14-1 at 61–62 (§ 12.01.02); Master Agreement (2020–2023), Ex. C to *id.* – ECF No. 14-1 at 166 (§ 12.01.02).

delinquent.[6] The agreements provide for reimbursement of attorney's fees and costs, audit fees, and all expenses incurred in connection with the collection of delinquent contributions.[7]

### 3. Unpaid Contributions

The defendants paid their March 2023–August 2023 contributions before the lawsuit was filed. After the lawsuit was filed, they paid the interest for the late-paid months of March 2023–July 2023, and they paid the September and October 2023 contributions late. They paid part of the November 2023 contribution and have an outstanding balance of $5,367.73. They did not make contributions for December 2023, January 2024, and February 2024.[8] The plaintiffs' counsel sent several demand letters between June 2023 and November 2023.[9] The plaintiffs calculate the following sums owed:[10]

| Work Month | Late Paid Contributions | Contribution Balance | 20% Liquidated Damages | 10% Interest (through date of payment or 4/22/24) | Subtotals |
|---|---|---|---|---|---|
| Sep-2023 | $9,977.86 | $0.00 | $1,995.57 | $154.62 | $2,150.19 |
| Oct-2023 | $8,281.93 | $0.00 | $1,656.39 | $70.38 | $1,726.77 |
| Nov-2023 | $2,272.10 | $5,367.73 | $1,527.97 | $149.16 | $7,044.86 |
| Dec-2023 | $0.00 | $4,643.20 | $928.64 | $86.51 | $5,658.35 |
| Jan-2024 | $0.00 | $3,424.72 | $684.94 | $34.71 | $4,144.37 |
| Feb-2024 | $0.00 | $2,897.84 | $579.57 | $6.35 | $3,483.76 |
| Subtotals: | | $16,333.49 | $7,378.08 | $501.73 | $24,208.30 |
| Subtotal (Contributions, LDs and Interest on Late Paid and Current Contribution Balances Post Litigation: | | | | | $24,208.30 |
| 10% Liquidated Damages on Prior Late-Paid Contributions (3/23 – 8/23): | | | | | $5,843.87 |
| 10% Interest on Prior Late-Paid Contributions (8/23): | | | | | $25.21 |
| Subtotal (LDs and Interest on Paid Late Contributions Prior to Litigation): | | | | | $5,869.08 |
| TOTAL: | | | | | $30,077.38 |

---

[6] Brown Decl. – ECF No. 14-1 at 3 (¶ 9); Master Agreement (2016–2020), Ex. B to id. – ECF No. 14-1 at 68 (§ 12.13.01); Master Agreement (2020–2023) Ex. C. to id. – ECF No. 14-1 at 172 (§ 12.13.01).

[7] Brown Decl. – ECF No. 14-1 at 3–4 (¶ 10); Master Agreement (2016–2020), Ex. B to id. – ECF No. 14-1 at 69 (§ 12.13.06); Master Agreement (2020–2023), Ex. C. to id. – ECF No. 14-1 at 173 (§ 12.13.06).

[8] Brown Decl. – ECF No. 14-1 at 4–5 (¶¶ 12–16).

[9] Do Decl. – ECF No. 14-2 at 2–3 (¶¶ 7–10).

[10] Brown Decl. – ECF No.14-1 at 5 (¶ 16).

### 4. Procedural History

The plaintiffs filed the complaint on December 4, 2023.[11] They served all defendants by substituted service by serving Mr. Gonzales, the defendant company's principal.[12] The defendants did not respond to the complaint or otherwise appear in the action. The Clerk of Court entered the defendants' default on February 23, 2024, and the plaintiffs moved for default judgment.[13] The plaintiffs served the defendant with entry of default, the motion for default judgment, and notice of the hearing.[14] The court held a hearing on June 13, 2024. The defendants did not appear at any time in the case.

## JURISDICTION, VENUE, AND SERVICE

Before entering default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A court must also ensure the adequacy of service on the defendant. *Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C 06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).

First, the court has federal-question subject-matter jurisdiction under ERISA and the LMRA. 29 U.S.C. § 1132(e); 29 U.S.C. § 185(c); *see* 28 U.S.C. § 1331(a). Second, the court has personal jurisdiction over the defendants, who are in Gilroy.[15] Third, the plaintiffs served the defendants properly.[16]

Venue is proper in this district because the plans are administered here and the plaintiffs have their principal place of business here.[17] 29 U.S.C. § 1132(e)(2); 29 U.S.C. § 185(a).

---

[11] Do Decl. – ECF No. 14-2 at 3 (¶ 11); Compl. – ECF No. 1.

[12] Do Decl. – ECF No. 14-2 at 3 (¶ 13); Returned Summons – ECF No. 8.

[13] Entry of Default.

[14] Do Decl. – ECF No. 14-2 at 3 (¶ 14); Returned Summons – ECF No. 13; Mot. – ECF No. 14.

[15] *See* Statement.

[16] Returned Summons – ECF No. 8.

[17] Compl. – ECF No. 1 at 3 (¶¶ 7–8).

# ANALYSIS

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who failed to plead or otherwise defend an action. After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true except as to damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The court need not make detailed findings of fact. *Id*. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (cleaned up). The decision to grant or deny a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986).

In deciding whether to enter a default judgment, the court considers seven factors:

> (1) [T]he possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the Eitel factors, courts often consider the second and third factors to be the most important." *Mohanna v. Bank of Am., N.A.*, No. 16-cv-01033-HSG, 2017 WL 976015, at *3 (N.D. Cal. Mar. 14, 2017) (cleaned up).

Here, the *Eitel* factors favor entry of default judgment against the defendants.

## 1. The Possibility of Prejudice to the Plaintiffs (First *Eitel* Factor)

The first *Eitel* factor considers whether the plaintiffs would suffer prejudice if the court does not enter default judgment, and whether such potential prejudice to them weighs in favor of granting a default judgment. 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). Without a judgment, the plaintiffs have no remedy. This factor favors default judgment.

**2. The Merits and Sufficiency of the Claims (Second and Third *Eitel* Factors)**

The second and third *Eitel* factors consider the merits of the claim and the sufficiency of the complaint. 782 F.2d at 1471. "The Ninth Circuit has suggested that [these factors] ... require that plaintiffs' allegations 'state a claim on which the [plaintiff] may recover.'" *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

29 U.S.C. § 1145 states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or . . . a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 1145 creates a claim for relief against employers who do not make timely contributions that are required under a collective bargaining agreement. *Bd. of Trs. v. RBS Wash. Blvd. LLC*, No. C 09-0660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010); *Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009).

The plaintiffs must prove the following: (1) the trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (2) the collective bargaining agreement obligated the defendants to make contributions; and (3) the defendants did not make the required contributions. 29 U.S.C. § 1145; *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Env't Sys.*, No. C 03-4858 WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

The allegations and declarations set forth by the plaintiffs establish that they are multiemployer plans as defined by 29 U.S.C. § 1002(37) and that the defendants breached the bargaining agreement and their statutory duties under ERISA § 515 by failing to timely pay contributions. The defendants are "employers" under ERISA, are signed parties to the bargaining agreement (and the incorporated trust agreement), owe contributions under the agreements, and are liable under the agreements for the unpaid contributions, liquidated damages, interest, and reasonable attorney's fees and expenses. *Operating Eng'rs' Health & Welfare Tr. Fund for N. Cal. v. Redline Directional, Inc.*, No. 17-cv-07345-JSC, 2019 WL 3782205, at *5–6 (N.D. Cal.

July 3, 2019), *R. & R. adopted*, 2019 WL 3779682 (N.D. Cal. Aug. 12, 2019). These factors favor default judgment.

### 3. The Sum of Money at Stake (Fourth *Eitel* Factor)

The fourth *Eitel* factor considers the sum of money at stake in the action. Substantial or unreasonable monetary demands weigh against default judgment. 782 F.2d at 1472 (three-million-dollar judgment, considered in light of the parties' dispute as to material facts, supported decision to not enter default judgment); *Tragni v. S. Elec. Inc.*, No. 09-32 JF (RS), 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Trs. v. RBS Wash. Blvd., LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010). When the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech., Inc.*, No. C 10-2212 EMC, 2011 WL 2600898, at *2–3 (N.D. Cal. June 30, 2011).

The plaintiffs ask for the amounts set forth in the Statement for unpaid contributions, liquidated damages, interest, attorney's fees, and costs. This amount is tailored to the defendants' specific misconduct (in the form of their failure to pay contributions) and is supported by evidence in the record.[18] Although the amount claimed is substantial amount, default judgment is appropriate. *Cf. Bd. of Trs. of the Pac. Coast Roofers Pension Plan v. Fryer Roofing Co.*, No. 16-CV-02798-LHK, 2017 WL 6539868, at *5 (N.D. Cal. Dec. 21, 2017) (fourth *Eitel* factor weighed in favor of default judgment of $2.4 million in ERISA case where "[a]lthough substantial, these sums of actual and statutory damages are tailored to Defendant's 'specific misconduct' of complete withdrawal from the Plan and other damages required under ERISA").

### 4. The Possibility of a Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)

The fifth and sixth *Eitel* factors consider the potential of factual disputes and whether a defendant's failure to respond was likely due to excusable neglect. 782 F.2d at 1471–72. In *Eitel*,

---

[18] *See* Statement.

there was a factual dispute and excusable neglect. *Id*. at 1472. The *Eitel* defendant disputed material facts in the (untimely) answer and counterclaim. *Id*. Moreover, the defendant's response was late because the parties had previously agreed to "what appeared to be a final settlement agreement," and "[the defendant] reasonably believed that the litigation was at an end." *Id*. Because his reliance was reasonable, and the defendant responded promptly when the agreement dissolved, there was excusable neglect for the untimely response. *Id*.

No facts suggest excusable neglect here. These factors favor default judgment.

### 5. The Strong Policy Favoring Decisions on the Merits (Seventh *Eitel* Factor)

The seventh *Eitel* factor considers the strong policy under the Federal Rules of Civil Procedure favoring decisions on the merits. 782 F.2d at 1472. Although default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314, at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits[,] ... [as] when a party fails to defend against an action[.]" *Id*.

Litigation on the merits is not possible. This factor supports default judgment.

### 6. Relief Sought

The plaintiffs ask for the amounts set forth above, which includes (1) $24,208.30 attributable to contributions, liquidated damages, and interest on contribution due after litigation was initiated, (2) $5,869.08 in liquidated damages and interest for late contributions due before litigation, and (3) $14,235.73 in attorney's fees and costs.[19]

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision about whether it is in his best interest to answer. *In re*

---

[19] Mot. – ECF No. 14 at 8.

*Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008) (rejecting requests for damages and fees because the prayer for relief lacked the "requisite specificity to put defendants on notice that the [plaintiff] sought attorneys' fees and costs on the default judgment"); *Bd. of Trustees of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co., Inc.,* No. 08-2038 SC, 2009 WL 1704677, at *4 (N.D. Cal. June 17, 2009) (defaulting defendant's due-process rights were not violated "because the defendant had been served with all of the papers justifying the pension fund's request and leading up to the final determination").

The complaint provides fair notice of the damages: the delinquent contributions, liquidated damages and interest, and attorney's fees and costs. So too did the notices along the way.

Although the complaint did not allege a specific amount in damages, "[c]ourts have awarded damages not specifically mentioned in complaints in ERISA cases where the defaulting defendants were on notice of the post-complaint amounts sought." *Bricklayers Loc. No. 3 Pension Tr. v. Martin*, 13-CV-04293-VC, 2014 WL 1998047, at *3 (N.D. Cal. May 12, 2014); *Total Air Balance*, 2008 WL 1704677, at *4–5.

The issue then is the calculation of damages.

"To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit." *Bd. of Trs. of the Laborers Health & Welfare Trust Fund for N. Cal. v. A&B Bldg. Maint. Co. Inc.*, No. C 13-00731 WHA, 2013 WL 5693728, at *4 (N.D. Cal. Oct. 17, 2013); see *Cannon v. City of Petaluma,* No. C 11-0651 PJH, 2011 WL 3267714, at *2 (N.D. Cal. July 29, 2011) (requires admissible evidence, including witness testimony); *Bd. of Trs. of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1232 n.13 (N.D. Cal. 2014) (the plaintiff has the burden to establish damages).

If the plaintiffs establish damages, they are entitled to them under ERISA:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title[20] in which a judgment in favor of the plan is awarded, the court shall award the plan —

---

[20] ERISA § 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

ORDER; R. & R. – No. 23-cv-06267-LB                 9

>>(A) the unpaid contributions,
>>
>>(B) interest on the unpaid contributions,
>>
>>(C) an amount equal to the greater of —
>>
>>>(i) interest on the unpaid contributions, or
>>>
>>>(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>>
>>(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>>
>>(E) such other legal or equitable relief as the court deems appropriate.
>
>For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

As summarized in the Statement, the plaintiffs estimated the delinquent contributions and calculated interest and liquidated damages. They are entitled to those damages, resulting in a total of $30,077.38. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.")

The next issue is whether the plaintiffs are entitled to $13,239.50 in attorney's fees and $996.23 in costs.[21] They are.

An award of reasonable attorney's fees is mandatory under 29 U.S.C. § 1132(g)(2). *NW Admin'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996). To determine a reasonable fee award, courts use the lodestar method by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010).

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

---

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

[21] Mot. – ECF No. 14 at 20–23; Do Decl. – ECF No. 14-2 at 4–6 (¶¶ 20–26).

ORDER; R. & R. – No. 23-cv-06267-LB    10

The relevant community is "the forum in which the district court sits," which is the Northern District of California in this case. *Id*. at 979. The party requesting fees must produce satisfactory evidence — in addition to the attorney's own affidavits or declarations — that the rates are in line with community rates. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

Here, the motion described the qualifications and hourly rate of attorneys Tino X. Do and Matthew P. Minser (both $305) and paralegal Nargis Shaghasi ($175).[22] They all have substantial ERISA expertise.[23] Based on the submissions and the court's knowledge about prevailing rates, the rates are reasonable. *Cf., e.g.*, *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 996 (N.D. Cal. 2014) (associate hourly rates of $250 and paralegal hourly rates of $150 are reasonable in an ERISA case); *Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 853 (N.D. Cal. 2017) (attorney hourly rates of $200 to $675 and paralegal hourly rates of $125 are reasonable in an ERISA case).

Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party must provide detailed time records documenting the tasks completed and the time spent. *Hensley*, 461 U.S. at 437, 440; *McCown*, 565 F.3d at 1102; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007).

The total attorney hours are 22.60 hours, and paralegal hours are 33.70 hours. All were for tasks related to the lawsuit, including preparing the complaint and the other court filings.[24] The hours are reasonable.

The plaintiffs ask for costs of $996.23.[25] An award of reasonable costs is mandatory under 29 U.S.C. § 1132(g)(2). *Albertson's*, 104 F.3d at 257. The costs are reasonable.

---

[22] Do Decl. – ECF No. 14-2 at 4–5 (¶ 20).

[23] *Id.*

[24] *Id.* at 5–6 (¶¶ 21–24); Billing Records – ECF No. 14-2 at 26–90.

[25] *Id.* at 6 (¶¶ 25–26); Billing Records – ECF No. 14-2 at 26–90.

# CONCLUSION

The court directs the Clerk of Court to reassign the case to a district judge and recommends entry of default judgment requiring damages of $44,313.11 (as set forth in the proposed order at ECF No. 14-2. The court asks the plaintiffs to serve this recommendation on the defendants in the same manner that they served the motion and to file proof of service.

Any party may file objections to this Report and Recommendation within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED AND RECOMMENDED.**

Dated: June 14, 2024

_____
LAUREL BEELER
United States Magistrate Judges